# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
# WINSTON-SALEM DIVISION

| | |
|---|---|
| **CHRISTOPHER BOYD,**<br><br>    **Plaintiff,**<br><br>**V.**<br><br>**REPUBLIC SERVICES, INC.,**<br><br>    **Defendant.** | **COMPLAINT** |

## COMPLAINT

COMES NOW Plaintiff, Christopher Boyd, by and through undersigned counsel, The Kirby G. Smith Law Firm, LLC, and hereby files this Complaint for Damages against Republic Services, Inc. (Defendant), and states as follows:

### I. JURISDICTION AND VENUE

1. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Counts One through Three of this Complaint, which arise out of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. (ADA).

2. This Court has jurisdiction over the parties of this action because the employment practices described herein were committed within Cabarrus County, North Carolina.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

4. Plaintiff exhausted his administrative remedies in this matter.

5. Plaintiff received his Notice of Right to Sue from the Equal Employment and Opportunity Commission (EEOC) and files this Complaint within the ninety (90) days

prescribed.

## II. PARTIES

6.  Plaintiff is a citizen of the United States and a resident of North Carolina.

7.  Defendant is a corporation registered to conduct business in the State of North Carolina.

8.  Defendant may be served by delivering a copy of the Complaint and Summons to its registered agent, CT Corporation System, located at 160 Mine Lake Court, Ste 200, Raleigh, NC 27615.

9.  Defendant employed fifteen (15) employees or more at all times relevant to this lawsuit.

10. Defendant is subject to the requirements of the ADA.

## III. FACTUAL ALLEGATIONS

11. In 2012, Plaintiff suffered a near-fatal accident, causing permanent injury to his right foot.

12. Plaintiff requested and received a Disabled Parking Permit (DPP) that authorizes him to use accommodations for the handicapped.

13. At all times relevant to this matter, Plaintiff used an unexpired DPP.

14. In July 2017, Defendant hired Plaintiff as a Route Driver.

15. Soon after beginning his employment with Defendant, Plaintiff's direct supervisor, "Jackie" (full name unknown, hereafter referred to as Supervisor 1), questioned why Plaintiff parked in a handicapped spot.

16. Supervisor 1 accused Plaintiff of "milking the system."

17. Plaintiff made Supervisor 1 aware of his disability and asked that he not make light of it.

18. Supervisor 1 continued to question Plaintiff's use of the DPP after this interaction.

19. On September 8, 2017, Supervisor 1 parked in the last remaining handicapped parking spot at Defendant's work location.

20. Based on knowledge and belief, Supervisor 1 does not possess a DPP.

21. Plaintiff parked in that specific handicapped spot since he began working for Defendant.

22. When Plaintiff asked that Supervisor 1 move his car, he refused.

23. Plaintiff filmed this exchange.

24. In a meeting that morning, Supervisor 1 stood up and said, "In case you saw what happened outside, one of your fellow co-workers is extremely selfish."

25. Later that day, Supervisor 1 called Plaintiff into his office.

26. Two other supervisors, "Rupert" and John Baptiste (hereafter referred to as "Supervisor 2" and "Supervisor 3"), were also in the office.

27. Supervisor 1 told Plaintiff he did not like his attitude.

28. Plaintiff asked Supervisor 1 to stop harassing him about his DPP.

29. Supervisor 1 replied, "I'm trying to figure out how you are working if you are disabled."

30. Plaintiff informed Supervisor 2 he wanted to file a complaint against Supervisor 1.

31. Supervisor 2 warned Plaintiff against filing the complaint, but Plaintiff insisted.

32. Later that day, Plaintiff met with Supervisor 2 and Kim Williams, Human Resources Manager for Defendant, to file his formal complaint.

33. Before allowing Plaintiff to speak, however, Williams told Plaintiff that the video he took of Supervisor 1 was "not admissible."

34. A week later, Supervisor 3, Williams, and the Regional Area Manager (RAM) told Plaintiff that during the course of their investigation into Supervisor 1, another employee came

forward to complain that Plaintiff "cussed" him out and threatened him several months earlier.

35. The RAM told Plaintiff that he would be put on a final warning.

36. Plaintiff had not received any prior warnings.

37. The RAM also told Plaintiff this final warning would remain in place throughout his employment.

38. Plaintiff denied that he ever threatened anyone or "cussed" anyone out.

39. Plaintiff asked for more information, but Defendant refused.

40. Plaintiff refused to sign the final warning.

41. Several days later, another supervisor employed by Defendant accused Plaintiff of, "trying to bring down the Concord Branch."

42. In late-September, Defendant demoted Plaintiff from his position as Route Driver.

43. Defendant permanently re-assigned Plaintiff to assist the Route Drivers.

44. This new position required Plaintiff to stand on the back of a truck for extended periods of time.

45. In late-October 2017, Plaintiff complained of foot pain and was sent by Defendant to ProMed Healthcare (ProMed), a medical clinic in Concord, NC.

46. The treating physician at ProMed suspected Plaintiff had Plantar Fasciitis, which may have been caused by standing on the back of the truck.

47. She recommended Plaintiff avoid standing for long periods and gave him stretches that may help with the pain.

48. Plaintiff returned to work later that day.

49. When the foot pain did not subside, Defendant again sent Plaintiff to ProMed.

50. On November 7, 2017, Plaintiff saw a second physician at ProMed.

51. This second physician also suspected Plantar Fasciitis, and gave a recommendation similar to the first physician, stretching and rest. She also recommended seeing a specialist.

52. When Plaintiff returned to work that day, Supervisor 3 told him to go home. He said would be in touch if any work was available.

53. On November 13, 2017, Williams directed Plaintiff to file a Short-Term Disability claim (STD) with the Reed Group.

54. The Reed Group processes all leave requests for Defendant.

55. On November 14, 2017, a representative from the Reed Group told Plaintiff he would not qualify for STD or any other protected leave program.

56. Despite this fact, Defendant insisted that Plaintiff apply for STD.

57. On December 11, 2017, Plaintiff gave STD documentation to the second physician at ProMed.

58. The Reed Group gave Plaintiff until December 11th to submit the completed documents.

59. The physician at ProMed said she had 24-48 hours to fill out the documents and would not have them done that day.

60. Plaintiff informed the Reed Group of the delay, and they told him it was fine as long as he submitted the documents as soon as possible.

61. On or about December 18, 2018, Plaintiff received his documentation from ProMed and a full release to return to work.

62. Plaintiff notified Supervisor 3 on December 18th that he could return to work.

63. Supervisor 3 told Plaintiff he would need to contact Williams before allowing him to

return.

64. Later that afternoon, Supervisor 3 told Plaintiff he would be receiving a letter in the mail from Williams.

65. Several days later, Plaintiff received a letter from Williams--dated December 18, 2017--terminating Plaintiff for, "not provid[ing] Reed Group with the paperwork required to process your requested leave of absence."

66. From November 7, 2017--the date Defendant refused to allow Plaintiff to return to work--until December 18, 2017, Plaintiff contacted Defendant several times per week asking if he could return.

67. Plaintiff is aware of positions with Defendant that would have accommodated his disabilities.

68. These positions include, but are not limited to, administrative and "ride-along" positions.

69. The ride-along position consists of riding inside a truck with a Route Driver and assisting as necessary.

70. Defendant primarily assigns temporary workers as ride-alongs.

71. Defendant also hires temporary workers to complete administrative work in the office.

72. Plaintiff is not aware of any disabilities claimed by Supervisor 1, Supervisor 2, or Supervisor 3.

### IV. CLAIM FOR RELIEF

### COUNT I

### ADA FAILURE TO ACCOMMODATE

73. Plaintiff incorporates by reference paragraphs 1-72 of his Complaint as if fully set forth

herein.

74. Plaintiff is a qualified individual with a disability as defined by the ADA. See paras. 11-13, 45.

75. Defendant had notice of Plaintiff's disability and need for accommodation in the form of temporary light work. See paras. 45-52, 67-71.

76. Defendant failed to accommodate Plaintiff. See paras. 52, 65-66.

77. Defendant's failure to accommodate directly caused Plaintiff's termination.

## COUNT II

## ADA RETALIATION

78. Plaintiff incorporates by reference paragraphs 1-77 of his Complaint as if fully set forth.

79. Plaintiff engaged in protected activity. See para. 32.

80. Defendant terminated Plaintiff.

81. Plaintiff was discharged under circumstances that raise a causal connection between the protected activity and the adverse action. See paras. 32-43, 52, 65-66.

## COUNT IV

## ADA DISCRIMINATION

82. Plaintiff incorporates by reference paragraphs 1-81 of his Complaint as if fully set forth.

83. Plaintiff is a qualified individual with a disability as defined by the ADA. See paras. 11-13, 45.

84. Plaintiff was terminated.

85. At the time of Plaintiff's termination, he was performing the job at a level that met his employer's legitimate expectations. See paras. 14, 34-36,

86. Plaintiff was discharged under circumstances that raise a reasonable inference of unlawful discrimination. See paras. 15-22, 23-29, 34-39, 41-43, 55-56, 61-66.

87. Defendant's reason for termination is pretext for unlawful discrimination. See paras. 55-56, 61-66.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Honorable Court grant the following relief:

a. Trial by jury;

b. A finding that Defendant violated Plaintiff's rights as set forth herein;

c. Full back pay plus interest, front pay, compensatory damages, punitive damages, reasonable attorney fees, and costs in accordance with the ADA; and

d. Any other relief this Court deems proper and just.

Date: July 12, 2018

        Respectfully submitted,
        THE KIRBY G. SMITH LAW FIRM, LLC

        s/Alexander C. Kelly
        Alexander C. Kelly
        North Carolina Bar No. 49308
        *Attorney for Plaintiff*

THE KIRBY G. SMITH LAW FIRM, LLC
15720 Brixham Hill Avenue
Suite 300
Charlotte, NC 28277
T: (704) 729-4287
F: (877) 352-6253
ack@kirbygsmith.com

# JURY DEMAND

Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

Respectfully submitted this 12th day of July, 2018.

                                          THE KIRBY G. SMITH LAW FIRM, LLC

                                          s/Alexander C. Kelly
                                          Alexander C. Kelly
                                          North Carolina Bar No. 49308
                                          *Attorney for Plaintiff*

THE KIRBY G. SMITH LAW FIRM, LLC
15720 Brixham Hill Avenue
Suite 300
Charlotte, NC 28277
T: (704) 729-4287
F: (877) 352-6253
ack@kirbygsmith.com